# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

CHRISTOPHER WILSON, et al.,

    Plaintiffs,

vs.                                                   CASE NO. CV-12-J-2721-NE

RECREATIONAL WATER PRODUCTS,
INC., et al.,

    Defendants.

## MEMORANDUM OPINION

Pending before the court is defendants' motion for summary judgement (doc. 52), memorandum and evidence in support (docs. 53 and 54), to which the plaintiffs filed a response and evidence in opposition (docs. 55-57), and the defendants thereafter filed a reply (doc. 58).

## FACTUAL BACKGROUND

The court set out the factual background of this case in its ruling on the defendants' motion to strike the plaintiffs' expert's testimony (doc. 50), and adopts the same here.  In sum, the undisputed facts establish that this is a products liability action in which plaintiff Christopher Wilson asserts he was injured while opening a container of AquaChem 1" chlorine tablets.  Complaint, ¶¶ 5-6.  Upon opening the lid, a cloud of visible gas emerged from the container and rendered Christopher

Wilson unconscious.  Depo. of J. Wilson, at 89-90.  Christopher Wilson alleges he suffered severe and permanent injuries as a result. Complaint, ¶ 17.  Plaintiff Jean Wilson alleges loss of consortium from those injuries.  *Id*., ¶ 20.

Relevant to the pending motion, the product at issue was manufactured by non-party BioLab, Inc. ("BioLab"), a wholly owned subsidiary of defendant Chemtura Corporation.  *See* affidavit of Stephen M. Venzon (doc. 54-1), at ¶¶ 2-4.  In turn, defendant Recreational Water Products, Inc. ("RWP"), is a wholly owned subsidiary of BioLab.  *Id*., ¶ 6.  The defendants argue that because neither of the named defendants designed, manufactured, packaged, or sold the chlorinating tablets at issue, they can have no liability for the plaintiffs' injuries.  The plaintiffs respond that the three businesses, Chemtura, BioLab, and RWP "operate as an integrated business with common ownership and control and share key financial and operational systems."  Plaintiffs' response (doc. 56), at 2.  On that basis, the plaintiff's argue, their claims are not barred.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal

element of the claim under the applicable substantive law which might affect the outcome of the case. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct.

2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Insurance.*, 232 F.3d 844, 848 (11th Cir.2000).

## LEGAL ANALYSIS

The issue before the court is whether the plaintiffs have pleaded and established a sufficient factual basis to hold the named defendants liable for injuries resulting from a product which they claim was not manufactured, sold, designed, or packaged by either of them.

Plaintiffs brought claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), negligent/wanton design, fitness for a particular purpose, and loss of consortium. For all but loss of consortium, the plaintiffs must demonstrate an injury caused by a manufacturer, supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner. *See e.g., Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447, 449 (Ala.1987); *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976), *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976).

4

*1. Whether Either Defendant Designed, Manufactured, Packaged or Sold the Chlorinating Tablet, or whether* **Alabama Code § 6-5-521 Bars Plaintiffs'** *Claims*

To establish liability under the AEMLD, the plaintiffs must prove they suffered injuries or damages by one who sold a product in a defective condition unreasonably dangerous to the plaintiffs as the ultimate users or consumers, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.[1]  *Culpepper v. Stryker Corp.,* 2013 WL 4852307, 5-6  (M.D.Ala.2013). Defendants argue simply that they were not the "manufacturer, supplier, or seller" of the chlorine tablets at issue.  The plaintiffs ask the court to ignore this shortcoming

---

[1] Proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown. *Townsend v. General Motors Corp.*, 642 So.2d 411, 415 (Ala.1994); *Jordan v. General Motors Corp.*, 581 So.2d 835, 836–37 (Ala.1991).  Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained. *Tanksley v. ProSoft Automation, Inc.,* 982 So.2d 1046, 1051) citing *Jordan*, 581 So.2d at 837.  This court has previously ruled that plaintiffs' expert may not testify as to whether the container was airtight or whether different packaging could have prevented the injury, both of which are necessary prerequisites given the plaintiffs' theory of injury.  Memorandum Opinion and Order of November 6, 2011, at 14-17 ("[b]ecause Brazel's testimony concerning the need for different packaging requires a finding that the current packaging is insufficient, and that finding necessarily requires evidence that Christopher Wilson read and heeded the warnings that were on the packaging, the court will not allow testimony regarding redesigning the packaging at this juncture.").  Thus, while the court noted a factual chasm in plaintiffs' evidence, defendants opted not to file a motion for summary judgment on the actual merits of plaintiffs' claims, and their deadline for doing so has passed.

and allow this action to proceed on the basis that Chemtura, BioLab and RWP have common ownership.[2]

As a general rule, in Alabama, a parent corporation is a distinct entity from its subsidiary and is not liable for the acts of its subsidiary unless it is a mere adjunct, instrumentality, or alter ego of the parent corporation.[3]  *Ford v. Carylon Corp., Inc.,* 937 So.2d 491, 498 (Ala.2006)  ("A parent corporation generally cannot be held liable for the acts of its subsidiary unless the latter's corporate veil can be pierced as a result of the parent's abuse of control.").  Even with wholly owned subsidiaries, such as those before the court, a parent corporation which owns all the stock of a subsidiary corporation is not liable for acts of its subsidiary corporation, unless the parent corporation so controls the operation of the subsidiary corporation as to make it a mere adjunct, instrumentality, or alter ego of the parent corporation.  *Hill v. Fairfield Nursing and Rehabilitation Center, LLC,* 2013 WL 3242867, 9 (Ala.2013), citing *Baker v. Hospital Corporation of America*, 432 So.2d 1281 (Ala.1983).

---

[2] Notably, plaintiffs have not sued BioLab.  Although defendants removed this case from state court on August 16, 2012, the first mention this court finds by the defendants that they are not the proper defendant was in April 2013, long after plaintiffs deadline to amend their pleadings had passed.

[3] Although Chemtura, BioLab and RWP are Delaware corporations, both parties cite Alabama law regarding liability of the defendants based on subsidiary or parent corporation status.  The court notes that applying the law of either state garners the same result concerning corporate entity liability, and thus has applied Alabama law on this issue.

The plaintiffs argue that these exceptions apply to the corporations here, and that they should not be considered distinct legal entities. The court has considered the time-honored indicia of control, and finds, from the evidence before it, that (a) the parent corporation owns all or most of the capital stock of the subsidiary; (b) the parent and subsidiary corporations have common directors or officers; (c) the parent corporation finances the subsidiary; that (d) the parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation; and (f) the parent corporation pays the salaries and other expenses or losses of the subsidiary. *See e.g., Evntl. Waste Control, Inc. v. Browning–Ferris Indus., Inc.*, 711 So.2d 912, 914 (Ala.1997); *Duff v. Southern Ry. Co.*, 496 So.2d 760, 762 (Ala.1986). Conversely, the court has either no evidence or insufficient evidence before it that (e) the subsidiary has grossly inadequate capital;(g) the subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation; (h) in the papers of the parent corporation or in the statements of its officers, the subsidiary is described as a department or division of the parent corporation, or its business or financial responsibility is referred to as the parent corporation's own; (i) the parent corporation uses the property of the subsidiary as its own; (j) the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent

corporation; or (k) the formal legal requirements of the subsidiary are not observed. *Id.*

Although none of these factors is dispositive, *Duff,* 496 So.2d at 763, the court has considered the relevant weight due each, as the underlying purpose is to examine whether the parent's control amounts to "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation. *Kwick Set Components, Inc. v. Davidson Industries, Inc.*, 411 So.2d 134, 137 (Ala.1982) (*quoting Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1106 (5th Cir.1973). See also *Madison County Communications District v. CenturyLink, Inc.,* 2012 WL 6685672, 3 (N.D.Ala.2012). Further, even when the subservient corporation appears to be an alter-ego, to pierce the corporate veil, "[t]here must be the added elements of misuse and control and harm or loss resulting from it." *South Alabama Pigs, LLC v. Farmer Feeders, Inc*., 305 F.Supp.2d 1252, 1258 (M.D.Ala.2004).

The plaintiffs fail to provide the court any evidence which suggests that Chemtura has "misused" BioLab or RWP, nor is there evidence from which a trier of fact could conclude that Chemtura exercises control over either of these subsidiaries

to the extent that they manifest no separate corporate interests of their own or function solely to achieve the purposes of Chemtura.

In consideration of the foregoing, the court will grant the motion for summary judgment for Chemtura, as there is no genuine issue of material fact concerning Chemtura's possible liability on the theories set forth by the plaintiffs.

The court finds otherwise in regard to defendant RWP. On the one hand, defendants have submitted affidavits of employees of BioLab, in which these gentlemen swear under oath that BioLab, Inc., manufactures and sells the AquaChem tablets relevant here. On the other hand, plaintiffs have produced evidence such as the product label, which states "Manufactured for/Fabricado por: Recreational Water Products, AquaChem Division." Doc. 57-14, at 4. Similarly, the information provided to the Environmental Protection Agency for its Material Data Safety Sheet reflects the manufacturer as "Recreational Water Products, Aqua Chem, P.O Box 1449, Buford, GA, 30515-1449." Doc. 57-15, at 3. Defendants freely admit that RWP holds the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") registration. Affidavit of Mark Jernigan (doc. 54-2), ¶ 6. Therefore, the court shall deny summary judgment to RWP as genuine issues of material fact remain concerning whether RWP "designed, manufactured, packaged, or sold" the tablets.

### 2. Whether Warning Claims against RWP are Pre-Empted or Barred by Federal Law

Plaintiffs assert that "RWP is the only one entitled to [this] exemption as it is the only one with an approved label registered with the EPA." Plaintiffs' response (doc. 56) at 11. The court takes said assertion as an admission that defendant RWP is entitled to judgment in its favor on any warning claims brought by the plaintiffs.[4]

### 3. Plaintiff Jean Wilson's Loss of Consortium Claim

Defendants argue that because they are due summary judgment on all of the product liability claims, they are also due judgment in their favor on plaintiff Jean Wilson's claim for loss of consortium, as it is derivative of the other claims. Given that the court disagrees with defendants on whether RWP is due such judgment in its favor on the plaintiffs' product liability claims, the court must therefore deny defendants' motion on plaintiff's claim for loss of consortium.

### CONCLUSION

In accordance with the foregoing, the court finds that defendant Chemtura is entitled to summary judgment in its favor on all counts of the complaint, as no genuine issues of material fact exist, and the court shall grant defendants' motion in this regard by separate Order. The court further finds that defendants' motion for

---

[4] The court has previously commented that no "failure to warn" claim appears in plaintiffs' complaint. *See* Memorandum Opinion and Order of November 6, 2011, at 10, n.1.

summary judgment on behalf of RWP is due to be denied on all counts of the complaint, and shall so rule by separate Order for the reasons set forth herein.

To the extent the plaintiffs have brought any claim for failure to warn, judgment is granted in favor of defendant RWP and against the plaintiffs on said claim.

**DONE** and **ORDERED** this the 10th day of December, 2013.

_____
INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE