FILED

2014 Jan-21  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

CHRISTOPHER WILSON, et al.,

     Plaintiffs,

vs.                          CASE NO. CV-12-J-2721-NE

RECREATIONAL WATER PRODUCTS,
INC., et al.,

     Defendants.

## MEMORANDUM OPINION

On December 10, 2013, the court denied defendant Recreational Water Products, Inc.'s ("RWP"), motion for summary judgment on the grounds that, despite defendant's arguments to the contrary, the court had before it evidence that RWP was the manufacturer of AquaChem 1" chlorine tablets. Memorandum Opinion and Order of December 10, 2013 (docs. 59-60). In that Opinion, the court noted defendants had failed to file a motion for summary judgment on the actual merits of plaintiffs' claims. Memorandum Opinion of December 10, 2013, at 5 n. 1. Thus, now pending before the court is defendant RWP's additional motion for summary judgment (doc. 61), brief and evidence in support of said motion (docs. 62, 63 and 66), the plaintiffs' response to said motion (docs. 70-72) and the defendant's reply (doc. 74).

## FACTUAL BACKGROUND

As previously summarized by the court, plaintiff Christopher Wilson asserts he was injured on July 15, 2010, while opening a container of AquaChem 1" Chlorinating Tablets.  Complaint, ¶¶ 5-6.  Upon opening the lid, a cloud of visible gas emerged from the container and rendered Christopher Wilson unconscious. Depo. of J. Wilson, at 89-90.  Christopher Wilson alleges he suffered severe and permanent injuries as a result. Complaint, ¶ 17.  Plaintiff Jean Wilson alleges loss of consortium from those injuries.  *Id.*, ¶ 20.

The plaintiffs had purchased this same product previously.  J. Wilson depo. at 45, 51; C. Wilson at 67-68.  The container in question however, was the first one purchased for chlorinating their pool for the summer of 2010. J. Wilson depo. at 50. Both Jean and Christopher read the instructions and warning labels on the container and knew the importance of keeping the chlorine tablets dry.  J. Wilson depo. at 53-54; C. Wilson depo. at 73-77.  They also knew that injuries from breathing chlorine gas were possible.  J. Wilson depo. at 56-57; C. Wilson depo. at 80.

In Jean's best estimate, this container of chlorine had been opened eight to ten time prior to the date of the accident.  J. Wilson depo. at 59-61.  She experienced no issues with opening the container prior to the date of the accident, including having removed chlorine tablets no more than a week prior to the injury.  J. Wilson depo. at

61, 77.  Christopher could think of no prior problem with this container or the AquaChem 1" Chlorinating Tabs.  C. Wilson depo. at 71-72, 89.

On the date of plaintiff Christopher Wilson's injury, July 15, 2010, Jean Wilson pulled the tablet container out and set it on the steps outside, while they cleaned up around the pool.  J. Wilson depo. at 84-85.

Jean Wilson recalled

[The kids were] wanting to get in the pool.  It needed to be treated.  I asked Chris to help me.  We were cleaning out the pool, skimming it. I asked him to hand me a chlorine tablet.  He opened the container.  I saw the – like the yellow gas came out, hit him in the face, he hit the ground.  I screamed for my son to help me.  Went and tried to get him in the car– well, you know, we got him in the car.  I hit the – my OnStar button, told them what had happened; I would meet them at Section.  I met them up there.  Nobody was there.  Then, the ambulance came. They put him on a stretcher.  Chris was unconscious and blue, and they took him in the back of the ambulance.  Asked me to step away.  They worked on him.  The helicopter landed.  They had him intubated and was doing the breathing for him, pushed him out on – put him in the helicopter and told me to get to Huntsville Hospital with him.

J. Wilson depo. at 68-69.

According to the plaintiff, the chlorine had been on the steps no more than ten or fifteen minutes when Christopher opened the container.  J. Wilson depo. at 85. When the cloud of yellow gas hit him in the face, he dropped to the ground and was grabbing his chest and gasping.  J. Wilson depo. at 89-93.  When Jean Wilson arrived at the hospital, Christopher was on a vent and life support.  J. Wilson depo. at 103.

He was intubated for almost a week, then eventually released home.  J. Wilson depo. at 104; C. Wilson depo. at 117.  Within a day or two, Christopher returned to the hospital because he was having difficulty breathing.  J. Wilson depo. at 105; C. Wilson depo. at 118, 133.  According to his wife, Christopher has continued to suffer from memory loss, breathing difficulty and marital problems since the date of the accident. J. Wilson depo. at 118-120; C. Wilson at 101, 108-110, 143-149. Although Christopher had asthma prior to the injury, it was well controlled.  J. Wilson depo. at 121.  He had not received any treatment for it other than from his "kid doctor."  C. Wilson depo. at 92-94.  Since his accident, he is on a variety of medications, including steroids and inhalers to help his breathing.  C. Wilson depo. at 96, 139, 160-164.

When asked what about the chlorine tablets, other than the warning, was defective or dangerous, Jean Wilson testified as follows:

A.  They're dangerous.  It says they're dangerous.  Not in my personal opinions.  I can't say that, no.

Q.  What do you mean, it's – you mean – talking about the container says it?

A. The – yeah, the container says it's dangerous.

Q.  Well, you know it's chlorine and you –

A.  Yeah, and it's dangerous.

Q.  And you know if it's not used properly or taken care of properly, it can – it can cause problems and be dangerous, can't it?

A.  Yes, sir.

Q.  And that's something you knew before you ever bought this product?

A.  Yes, sir.

Q.  But I just need to make sure I understand here that – that I know, if y'all have some criticism of this product or something – there's something particular that you say was wrong with it, either the container was broken or the top wasn't right, or there was some hole in it that allowed moisture to get in.  Do you know of anything like that?

A.  No, I don't know of it, no.
....

Q.  And I think you told us you had opened this very container that was involved in this accident at least several times before the day of the accident?
A.  Yes, sir.

Q.  You had opened it, you had removed chlorine from it and used those chlorine tablets to sanitize your pool, right?

A.  Yes, sir.

Q.  And all those times you did that, you did not have any trouble?

A.  No, sir.

J. Wilson depo. at 135-137.  Similarly, Chriostopher Wilson testified as follows:

Q.  What, if anything that you know of, was wrong with the container of chlorine tablets?

5

A. I'm not sure.

....

Q.  Is there anything about the container of chlorine tablets or the tablets themselves that you say makes them not reasonably safe?

A.   I'm not sure on that one.

Q.  Is there anything at all that you say is wrong with this product that you were using on the date of the accident?  I'm talking about the container of chlorine tablets.

A.  I'm not sure.

....

Q.  As I understand your testimony today, if there's something wrong with that product, you don't know what it is, correct?

A.  Correct.

C. Wilson depo. at 180-181.

Based on the above facts, the plaintiffs brought claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), claims for negligence and wantonness, claims for breach of express or implied warranties, and a claim for loss of consortium.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986).  An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  *Allen v. Tyson Foods, Inc*., 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970).  Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp*., 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).  In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S.Ct.

2505, 2511 (1986).  Speculation does not create a genuine issue of fact.  *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Insurance*., 232 F.3d 844, 848 (11th Cir.2000).

## LEGAL ANALYSIS

The issue before the court is whether the plaintiffs have pleaded and established a sufficient factual basis to hold the named defendant liable for injuries resulting from plaintiff Christopher Wilson opening a container of AquaChem 1" Chlorinating Tabs.  Plaintiffs assert under the AEMLD, defendant has "presented no evidence that the product did not reach the Plaintiffs in a condition substantially unchanged from that which it left RWP."  Plaintiffs' memorandum, at 2.  However, as made clear from the standard of review, the defendant has no burden to produce evidence.  Rather, the defendant having asserted a lack of any genuine issue of material fact, the plaintiffs bear the burden to produce evidence that an issue remains for trial.

The plaintiffs argue that their expert testified that "the product could be contaminated by water during normal, expected use" and that defendant "RWP should

have foreseen the alleged alteration of the product it complains of now." Plaintiffs' memorandum, at 2. According to plaintiffs' expert, any amount of water coming in contact with the tablets would cause chlorine gas to escape. Depo. of Christopher Brazel (submitted as doc. 49-1) at 215. However, upon further questioning, he admitted to having conducted no studies to try to measure how much water would need to enter the container to cause chlorine gas to build inside the container. Brazel depo. at 352-353.

Defendant points out that the tablets are specifically designed to release chlorine into swimming pools when mixed with water. Affidavit of Al Yeoman (submitted as defendant ex. 2), ¶¶ 3, 6. If the product mixed with sufficient water to create a gas cloud, such contamination would be a significant alteration of the product. *Id.*, ¶ 9.

Plaintiffs brought claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), negligent/wanton design, breach of express or implied warranties, and loss of consortium.[1] For all but loss of consortium, the plaintiffs must

---

[1]The court has previously dismissed any failure to warn claim the plaintiffs may have been attempting to bring, although the court noted that the plaintiffs have never pled such a claim. Buried on pages 6-7 of their response to the defendant's motion for summary judgment (doc. 72), the plaintiffs assert

This court's ruling on RWP's motion to exclude other aspects of Plaintiffs' expert testimony regarding the product container was excluded at the time because there was not evidence before the court concerning the instructions and warnings on the labels or whether Christopher Wilson had in fact read and heeded those

demonstrate an injury caused by a manufacturer, supplier, or seller who markets a product not reasonably safe when applied to its intended use in the usual and customary manner.  *See e.g., Entrekin v. Atlantic Richfield Co.,* 519 So.2d 447, 449 (Ala.1987); *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976),  *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976).

To establish liability under the AEMLD, the plaintiffs must prove they suffered injuries or damages by one who sold a product in a defective condition unreasonably dangerous to the plaintiffs as the ultimate users or consumers, if (a) the seller was engaged in the business of selling such a product, and (b) it was expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.  *Culpepper v. Stryker Corp.,*  2013 WL 4852307, 5-6  (M.D.Ala.2013). As this court has previously noted, proof of an accident and injury is not in itself sufficient to establish liability under the AEMLD; a defect in the product must be affirmatively shown.. *Townsend v. General Motors Corp*., 642 So.2d 411, 415 (Ala.1994); *Jordan v. General Motors Corp.,* 581 So.2d 835, 836–37 (Ala.1991). Unquestionably, the plaintiffs have proved an injury.  However, by plaintiff's own

---

instructions and warnings.  That evidence is now before the court, allowing the court to reconsider that exclusion.

However, the court has no motion to reconsider before it.  Moreover, the plaintiffs conceded that its failure to warn claim against RWP was pre-empted by FIFRA, and the court granted the defendant's previous motion for summary judgment on this basis.

expert's testimony, chlorine tablets are perfectly safe unless and until water is introduced into the container. *See e.g.*, depo. of Brazel at 344. Brazel testified that regardless of the package design, if water is allowed to mingle with the chlorine tablets, the results could be "hazardous." *Id*., at 147-148.

In other words, plaintiffs have provided the court with no evidence that the product was defective as purchased by them. In fact, the plaintiffs testified they used chlorine out of this very container eight to ten times, without incident, prior to the date of the injury, belying any claim of the product being unreasonably dangerous as sold. Indeed, the court has no evidence that the product as sold was not fit for its ordinary purpose, that being introducing chlorine into swimming pools. *See e.g. Casrell v. Altec Indus., Inc*., 335 So.2d 128, 133 (Ala.1976) ("A 'defect' is that which renders a product 'unreasonably dangerous,' i.e., not fit for its intended purpose"). Without evidence to support the conclusion that the product was defective and/or unreasonably dangerous when it left the hands of the seller, the burden is not sustained. *Tanksley v. ProSoft Automation, Inc*., 982 So.2d 1046, 1051 (Ala.2007); citing *Jordan*, 581 So.2d at 837.

This court has previously ruled that plaintiffs' expert may not testify as to whether the container was airtight or whether different packaging could have prevented the injury. Even if the court had allowed such testimony, it would not

11

satisfy the plaintiffs' burden.  Evidence of whether different packaging theoretically could have prevented Christopher Wilson's injuries is not akin to proving this product, as sold, was unreasonably dangerous.

The court has nothing before it which establishes why or how the container in question released a cloud of chlorine gas when Christopher opened it.  Clearly, the product itself was not defective, because the plaintiffs had used it previously eight to ten times out of that very container.  Thus, somewhere between the prior use and the use which caused the injury, chlorine gas somehow collected in the container. However, all the testimony on how this may have happened amounts to no more than speculation.  "[T]he manufacturer of a product is not an insurer against all harm that might be caused by the use of the product, and the manufacturer or designer is not obligated to produce an accident-proof or injury-proof product." *Verchot v. General Motors Corp.*, 812 So.2d 296, 301 (Ala.2001).  Rather, the AEMLD is a fault based doctrine, and plaintiffs must prove more than the fact that an injury occurred while using the product. *Borum v. Werner Co.*, 2012 WL 2047678, at *14 (N.D.Ala.2012). The only evidence presented by the plaintiffs is that a cloud of chlorine gas escaped and Christopher was seriously injured therefrom.  This is not evidence of a defect in either the product or the packaging.  The plaintiffs have failed to present substantial evidence that the product was sold with a defect. *See e.g., Jordan v. General Motors*

*Corp.*, 581 So.2d 835, 836-837 (Ala.1991).  The necessary corollary to the lack of evidence as to what actually caused the injury to occur is that plaintiffs cannot establish that Christopher Wilson's injuries were caused by any defect in the product or its packaging.

The plaintiffs' assert their remaining claims, for negligence and wantonness, breach of express or implied warranties, and loss of consortium, should survive summary judgment, but fail to brief any of them.  However, because the plaintiffs failed to address any of these claims in their response to the defendant's motion for summary judgment, the court deems the same abandoned.  *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) ("failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284 (11th Cir.2003); *see also Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir.2001).

## CONCLUSION

In accordance with the foregoing, the court finds that defendant RWP is entitled to summary judgment in its favor on all counts of the complaint, as no

genuine issues of material fact exist, and the court shall grant defendant's motion in this regard by separate Order.

**DONE** and **ORDERED** this the 21st day of January, 2014.

INGE PRYTZ JOHNSON
SENIOR  U.S.  DISTRICT  JUDGE

14